## TEXAS LIFE INS. CO. v. MANSEL.

### No. 1900.

Court of Civil Appeals of Texas. Waco.

May 13, 1937.

A. D. Mabray, of Waco, and Vernon Goodall, of San Antonio, for appellant.

Cecil R. Glass, of Marlin, for appellee.

MAXWELL, Special Chief Justice.

Mrs. Aleene Mansel, plaintiff below, filed this suit in the district court of Falls county against Texas Life Insurance Company, appellant, alleging that appellant had issued to her husband a life insurance policy in the principal sum of $1,000 on the 2nd day of October, 1935; that her husband, Fern W. Mansel, had paid the premium thereon and that said policy was in full force and effect; that the said Fern W. Mansel died on or about the 14th day of November, 1935; that demand had been made but defendant, Texas Life Insurance Company, had refused and failed to pay said policy and prayed for recovery thereon with interest and costs. Defendant below, by way of answer, alleged that the deceased, Fern W. Mansel, had never paid the premium on said policy and that said policy had never been delivered to and accepted by him. Plaintiff, by way of supplemental petition, alleged that the defendant, by reason of a certain letter written by defendant on November 8, 1935, had waived payment of premium and delivery and was estopped to deny same and in a trial amendment asked for $150 attorney's fees.

From the record it seems that Fern W. Mansel applied to the Texas Life Insurance Company on September 20, 1935, for a policy in the sum of $1,000. The application, which was later incorporated into the policy, read in part as follows: "That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my life time and good health." Attached to said application and executed on the same day was a statement made by Fern W. Mansel to the effect that he had paid no cash, delivered no check, and executed no note for the premium on said policy. There is also a further statement signed by the agent to the same effect attached to said application. There had also been attached to the application a premium receipt which had been torn off. The agent, Joe Thompson, testified that he indiscriminately used these receipts and tore them off of applications as he needed them; that he did not give this receipt to the deceased.

The application was received by the company and, after having passed through the routine of the home office, the policy was executed for delivery on the 2nd of October, 1935, and either placed in the box or delivered personally to Joe Thompson, the company's agent. It was the practice of the company to keep an account with its agents and charge the nets on policies to them as issued, and on October 2nd the net on this policy was charged to the agent, Joe Thompson. The agent took the policy and placed it in a brief case in which he carried policies for delivery and some six or ten days thereafter met the deceased on the streets of Marlin and told him that he had the policy. The deceased advised the agent that he had decided that he did not want it. The agent carried the policy either in his brief case

or in his box at the home office until the 16th day of November, at which time he delivered the policy to the home office and same was on that date canceled and marked "Not Taken." When the policy was issued, a card was prepared in the home office setting up an account with the assured. This account shows no payment by the assured on the policy by way of premium and is also marked "Returned Not Taken November 16, 1935." On November 8, 1935, a letter, over the facsimile signature of the president of the company, was written and mailed to the assured at Marlin, Tex., in which letter it is stated that the policy had been issued and states that the policy is a good policy and offers the services of the company to the assured. As to this letter the company officers testified that it was written by error of the clerical force, since such letter, under the rules of the office, was not to be written until the receipt card for delivery was returned and the account with the assured showed that the policy had been delivered and premium paid. On the 5th day of November, 1935, the assured received an injury in an automobile accident, from which he died on the 14th day of November, 1935. On the 18th day of November, 1935, the company received notice of his death through a funeral home at Marlin, Tex.

The company had a written contract with the agent, which provided, among other things, that all policies shall be delivered within thirty days and if not so delivered shall be returned to the company, and says: "Otherwise, it is agreed that second party (the agent) shall be liable to the first party for the same amount as if such policy has been delivered and in force and the premium thereon collected, and it will be the duty of the second party to pay the same to the first party"; and further provides that the agent shall pay unto the company all moneys collected within sixty days after the issuance of the policy.

The case was tried before the court without a jury.

Based on substantially the above facts, the trial court gave judgment for the plaintiff for the face of the policy and $150 attorney's fees and filed findings of fact. Defendant filed exceptions to these findings of fact on the ground that they were not supported by the evidence.

Appellant's contentions are, first, that the original premium had never been paid; second, that the policy had never been delivered to and accepted by the assured. Appellee contends that the evidence is sufficient to show some kind of settlement between the agent and the assured and that the company had extended credit therefor to the agent; second, that there was a constructive delivery of the policy to the assured by delivering it to the agent for the assured; and, third, that the company had waived the requirements of the policy as to the payment of premium and delivery and was estopped to assert same by reason of the letter of November 8th.

We think the stipulation in the policy to the effect that same shall not take effect unless the first premium is paid and the policy is delivered to and received by the assured during his lifetime and in good health is a valid stipulation. American Home Life Ins. Co. v. Melton (Tex.Civ App.) 144 S.W. 362 (writ refused); Denton v. Kansas City Life Ins. Co. (Tex.Civ.App.) 231 S.W. 436; Great Southern Life Ins. Co. v. Alcorn (Tex.Civ.App.) 80 S.W.(2d) 429 (writ refused). The burden is on appellee, plaintiff below, either to prove compliance with such stipulation or such facts as would relieve the assured therefrom.

The only circumstances tending to show the payment of the first premium by the assured was the absence of the receipt blank on the application and the letter of November 8th. Charging the nets to the agent, as done in this case, was a system of accounting between him and the company. It did not relate to the payment of the premium by the assured. In rebuttal of this, there is the signed statement of the assured attached to the application to the effect that he had paid no cash and given neither a note nor a check in settlement for the policy, and the further statement executed by the agent at the same time and also attached to the application to the same effect. Neither of these statements is challenged in the record. The records of the company show that no first premium had been paid. The testimony of the agent was to the effect that no settlement was had with the assured. The records show that it was a C. O. D. transaction. We find no evidence of any settlement between the assured and the agent.

We do not think, therefore, that the evidence, as against these records, shows that the first premium was ever paid.

It is not contended by appellee, as we view the record, that the policy was ever manually delivered to the assured and

accepted by him. She contends that it was constructively delivered when it was turned over to the agent for delivery to him. The record shows that the general instructions to the agent were to collect the first premium and to get a policy receipt when he delivered the policy. Under the facts in this case, we do not think that such was an unconditional delivery. The evidence further shows that the agent made one attempt to deliver the policy, but that the assured declined to accept it. Delivery is not always essential to put a policy into effect. If, however, the failure to deliver is due to the fault of the assured and not the fault of the company, then failure to deliver, as in this case, would defeat recovery on the policy.

Appellee claims by her pleading that by the letter of November 8th, the company waived the payment of the premium and delivery of the policy.

■ This letter could not, as we view the record, operate as a waiver or as an estoppel. The record shows that it was written by mistake. Guarantee Fund Life Ass'n v. Barclay (Tex.Civ.App.) 11 S.W.(2d) 231 (writ dismissed). It further shows that at the time of its writing the assured had already received his fatal injuries and as of that date could not have received and accepted the policy while in good health. There is no evidence in the record that at the time of writing the letter any representative of the company had knowledge of the fatal illness at that time of the assured.

■■ If it is appellee's contention that appellant, by the letter of November 8th, waived the payment of premium in any manner, that is, either by payment of cash or by some other kind of settlement therefor, we could not sustain such contention. Revised Statutes, 1925, art. 5053, as amended (Vernon's Ann.Civ.St. art. 5053); Physicians Health & Accident Co. v. Davis (Tex.Civ. App.) 92 S.W.(2d) 520, syl. 3. In any event a waiver can exist only where, with knowledge of the material facts, one does or forbears to do something inconsistent with the existence of the right in question, or of his intention to rely on that right. Bering Mfg. Co. v. W. T. Carter & Bro. (Tex.Civ. App.) 255 S.W. 243, 252, at page 253, affirmed (Tex.Com.App.) 272 S.W. 1105.

■ Likewise, "An estoppel cannot be invoked as an instrumentality of gain or profit; it can operate only to protect the person invoking it in a right which he has already acquired and which he would lose unless the party against whom it is urged is prevented from asserting a conflicting right which would be superior to that of the person invoking the estoppel.". Kuykendall v. Spiller (Tex.Civ.App.) 299 S.W. 522, at page 527 (writ refused); Robertson v. Vernon (Tex.Civ.App.) 3 S.W.(2d) 573, syl. 2 to 4, affirmed (Tex.Com.App.) 12 S.W.(2d) 991.

If the assured had not paid his premium or settled for it in some manner, no right had accrued to him or to his beneficiary under the policy. There is no evidence in the record that the letter of November 8th caused the assured in anywise to change or alter his position, or that any right then acquired by him was in the least affected.

■ We, therefore, are of the opinion that the evidence does not support the findings either as to delivery of the policy or as to waiver and estoppel. The burden was on plaintiff affirmatively to prove all these things as well as the payment of the premium. American Central Life Ins. Co. v. Alexander (Tex.Com.App.) 56 S.W.(2d) 864.

In view of the conclusions above, it is not necessary to discuss any other assignment.

It also follows that, as the case appears to be fully developed on the trial below, the cause should be reversed and rendered.

This cause is therefore reversed and rendered for the appellant.