W. H. SLEEPER v. J. L. MURPHY, Appellant.

Sale of Land by Agent: UNAUTHORIZED CONTRACT: RATIFICATION
1 Where a real estate dealer enters into a contract for the sale of land on terms other and different from those given him by his principal, the same is not binding upon the principal unless subsequently ratified.

Ratification: EVIDENCE. Where by the conduct and correspond-
2 ence of the principal he ratifies the unauthorized contract for
the sale of his land by his agent, the same is irrevocable.
Evidence considered and held to constitute ratification.

*Appeal from O'Brien District Court.*—HON. WM. HUTCHIN-
SON, Judge.

FRIDAY, APRIL 10, 1903.

ACTION in equity asking the specific performance of a
contract to convey land. Judgment for the plaintiff.
The defendant appeals.—*Affirmed.*

*Ernest C. Herrick* for appellant.

*Carr, Hewitt, Parker & Wright* and *Milt H. Allen*
for appellee.

SHERWIN, J.—On the 23d day of May, 1900, the de-
fendant, by letter, authorized one P. A. Edington to list
lands belonging to him in O'Brien county for sale. The

1. UNAUTHOR-    sales were to be made at $40 per acre; $1,500
IZED con-   to $2,000 cash to be paid at the time the
tract: ratific-
ation.   contract was made, and the balance to be in
payments of $600 each year thereafter until paid, with six
per cent. interest, payable annually. The crop of that
year was also to be reserved for the defendant. On the
14th day of June following, Edington sold a half section
of the defendant's land to the plaintiff at $40 per acre.
Fifteen hundred dollars of the price was to be paid in cash,
and the balance in eighteen payments, represented by as
many notes, drawing six per cent. interest from March 1,
1901, and made payable "on or before," and due on the
1st of November of each year. A written memorandum
of the sale was given by Edington in the name of the de-
fendant. It seems hardly necessary to say that the terms
of this sale were not authorized by the defendant, or bind-
ing upon him, in the absence of a ratification thereof.

Edington had no authority to postpone the interest, or to make the notes payable on or before, and he also failed to reserve the rent as required; hence the defendant was not bound by the contract at the time it was made, and, unless he afterwards ratified it, he should not be compelled to perform it.

The day after the sale was made, on the 15th of June, Edington wrote the defendant, advising him thereof, and stating to him the exact and true terms agreed upon, including the conditions as to the notes, and stating that they were so drawn because of the reservation of the 1900 rent. In that letter he asked the defendant to execute a contract for the land in the name of A. W. Sleeper, and send it on. On the 18th day of June, Edington again wrote the defendant relative to the matter; calling his attention to the reason why the interest on the notes was postponed, and urging a ratification of the sale. June 21st the defendant wrote to Edington saying: "Your letter asks me to use name of 'A. W. Sleeper' in making papers, while the copy of 'Memorandum of sale' sent me by Mr. Miller, made by yourself, uses the name of the purchaser as 'W. H. Sleeper.' Which is right and what is the reason for the discrepancy? When you send correct name of the responsible party, will write you again in a day or two." The memorandum of the sale referred to in the foregoing letter is the one given to the plaintiff, a copy of which was received by the defendant as early as the 18th of June—only a day or two after he received Edington's letter of the 15th. It conclusively appears, then, that as early, at least, as the 18th of June, the defendant was fully advised of the exact terms and conditions upon which the sale had been made. On the 23d day of June, Edington again wrote the defendant, giving him a reason for the mistake in the name, told him who the purchaser was, again urged him to send on a contract so that the sale might be closed, and advised him

2. RATIFICA-TION: evidence.

further that the plaintiff had then begun an action for specific performance of the contract. Answering that letter, the defendant wrote as follows: "Dear Sir: In replying to yours of the 23d inst., would say that I have written to the Recorder of O'Brien County to inform me as to the number of acres, according to the land records of his county, and as soon as I hear from him I will prepare a contract and send you. I do not understand why your man, Mr. Sleeper, should seek into court in such haste as I never refused to make a contract, and should I have sent you the papers in the name you directed it would have to be changed."

With a copy of the memorandum of sale and the several letters written to him by Edington, to which we have referred, before him, and without having interposed a single objection to the terms of the sale, the defendant finally answered the numerous appeals of Edington for a ratification of his acts in this last letter, and at the same time he answered the suit brought against him by the plaintiff by deliberately promising to send on a contract to close the matter. It will not do to say that he only agreed to send on such a contract as he might be pleased to make. He does not say any such thing, nor can it be implied from the language of his letter. On the other hand, when it is construed in connection with the contemporaneous correspondence, it will admit of no such interpretation. If the defendant had not intended to ratify the sale upon the precise terms agreed upon by the plaintiff and Edington, he would not have written as he did. Having ratified the sale, it is, of course fundamental that it is irrevocable.

We think the judgment of the district court right, and it is AFFIRMED.