## HAYS et al. v. MARBLE et al.
### No. 5888.

Court of Civil Appeals of Texas. Amarillo.
July 6, 1948.

Rehearing Denied Sept. 7, 1948.

330

Morgan, Culton, Morgan & Britain, of Amarillo and George J. Jennings, of Tulia, for appellants.

Griffin & Morehead, of Plainview, for appellees.

STOKES, Justice.

This suit involves the title and possession of the east half of Section 127, Block A in Swisher County, containing 320 acres. The land was owned by William Hoefer at the time of his death which occurred November 20, 1930. William Hoefer was twice married. There were five children born to the first marriage and his first wife died about the year 1874. The second wife died prior to the death of William Hoefer. There were nine children born to the second marriage and during the coverture of William Hoefer and his second wife, he purchased the land in controversy. On December 7, 1940, R. R. Hoefer, one of the children of the second marriage, on behalf of himself and purportedly as agent for the legal heirs of William Hoefer, entered into a written contract with the appellant, John S. Hays, in which he agreed to sell and appellant agreed to purchase the half section of land for a consideration of $22.50 per acre, $3,200 to be paid in cash upon the closing of the transaction and the balance to be evidenced by a note due on or before ninety days after date, bearing interest at the rate of 4% per annum. The contract was made upon the contingency that appellant should procure a loan from the Federal Land Bank for the amount evidenced by the note. The contract was placed in a bank at Tulia in connection with $1,000 earnest money deposited by appellant. The brothers and sisters and half-brothers and half-sisters of R. R. Hoefer lived in widely scattered sections of the country, some in California, some in Oklahoma, Kansas and other localities and, after the contract of sale was executed, R. R. Hoefer had a deed prepared in accordance with the contract, attached it to a route letter in which each of the heirs was instructed as to the manner of its execution and mailing to another of the heirs. Two of the children died leaving heirs or legatees so that there are now fourteen heirs and one legatee who are the sole and only heirs and successors of William Hoefer and his deceased wives, all of whom are either plaintiffs or cross-defendants in this suit. A. F. Nossaman procured the interest of one of the heirs through a sheriff's sale and he is likewise a party here.

The suit was filed by H. L. Marble and E. M. Jackson, for themselves and as agents and representatives of twelve of the heirs of William Hoefer as an action in trespass to try title, alleging they had purchased the interests of all of the heirs of William Hoefer, deceased, and others, and prayed for judgment decreeing the title to them. Appellant answered by a plea of not guilty and further alleged that he was in possession of the land as the purchaser under the contract of sale executed by R. R. Hoefer for himself and as agent of the heirs of William Hoefer, deceased. He impleaded Nossaman, Henry Gransbury, the legatee, and the remaining heirs of William Hoefer and prayed for specific performance of his contract against them and all of the heirs of William Hoefer, deceased. He tendered the entire purchase price of $7,200 and prayed that Marble and Jackson be denied any recovery upon the ground that any rights or interest they might have was acquired long after he had purchased the land under the contract of sale, with full knowledge and notice of his rights and subject thereto. Appellees supplemented their pleadings by denying that R. R. Hoefer was the agent of any of them or that he had any authority to bind them to the contract of sale.

A jury was impaneled to try the case but at the close of the testimony, the court sustained a motion of the appellees for an instructed verdict and upon the return of such verdict by the jury, judgment was rendered in favor of the appellees, and denying appellant any recovery upon his reconvention and plea for specific performance of the contract of sale. Appellant complains of the action of the court in giving to the jury an instructed verdict and assigns reversible errors upon numerous other ground which will appear from our discussion of the issues. He contends that, if R. R. Hoefer did not have authority to bind the other heirs and owners of other interests in the land to the contract of sale, all of them had, by various acts and conduct, ratified and confirmed the same and were therefore bound by its terms and pro-

visions. He asserts further that he was in possession of the land, cultivating it and using it from the time the contract was executed until the suit was filed and that appellees, Marble and Jackson, were at all times fully aware of his possession and knew he was occupying and holding possession under the contract of sale. The record shows that the deed was started upon its rounds soon after the contract was executed and that it was signed and acknowledged by ten of the heirs, two of whom were married women and were joined therein by their husbands. It was returned to R. R. Hoefer about a year after the contract was executed and retained by him until 1947 when it was delivered to his attorneys shortly before this suit was instituted.

Appellant does not claim that R. R. Hoefer had authority from any of the other heirs of William Hoefer or other owners of interest in the land to execute the contract of sale at the time it was executed, but he asserts that all of those who signed and acknowledged the deed thereby ratified and confirmed the contract and adopted the act of R. R. Hoefer in executing it as their agent and that, by their acts and conduct, the others had also ratified it.

■ Ratification consists of the adoption by the reputed principal of the benefits of and liabilities involved in an act done or performed, or a contract made, by the reputed agent on behalf of the reputed principal but without his authority. Gallup v. Liberty County, 57 Tex.Civ.App. 175, 122 S.W. 291; Evans v. McKay, Tex.Civ.App., 212 S.W. 680. It is not a method of proving authority. It assumes that the agent's act was not authorized when it was performed but, by subsequent conduct of the principal, it attaches to such act of the agent the same legal consequence as if the principal had previously given to the reputed agent authority to perform it on behalf of the principal. One may ratify the acts or contract of another, purporting to be performed or made on his behalf, whether the other was his agent and exceeded his authority as such or was not his agent at all. It presupposes that the party so acting did not have previous

authority to perform the act or make the contract but it is equivalent to authority previously conferred and relates back to the date of the act performed or the contract made between the reputed agent and a third party. City of Laredo v. Macdonnell, 52 Tex. 511; Smith v. Estill, 87 Tex. 264, 28 S.W. 801; Lynch Davidson & Co. v. Denman Lumber Co., Tex.Civ.App., 272 S.W. 803.

■ The deed executed by the ten heirs of William Hoefer, deceased, was fully in accordance with the contract executed by R. R. Hoefer and appellant. It conveyed the same land to appellant and recited the same consideration, payable in the manner provided by the contract. Although it was never delivered to appellant, it was signed and acknowledged in accordance with the statutes of this State and none of the grantors made any objection to its terms or to its being delivered to appellant until about the time this suit was instituted by them. There is no contention that appellant, by any act of his, delayed the completion of his purchase and no evidence that he did so. The delay was due solely to the acts and conduct of the heirs of William Hoefer, deceased, particularly to lack of attention on the part of R. R. Hoefer. We think it is conclusive that, by signing and acknowledging the deed, with full knowledge, which they must have had, of the execution and terms of the contract of sale, although the deed was not delivered, all of those who executed it thereby adopted the benefits and liabilites involved in the act of R. R. Hoefer in executing the contract of sale and ratified such acts. The only reason they executed the deed was that R. R. Hoefer, acting as their agent, had made the contract with appellant to sell the land to him and had sent them the deed to be executed in accordance with such contract. Their act in executing and acknowledging the deed therefore made and constituted R. R. Hoefer their agent to the same degree and as fully as he would have been if they had theretofore given him authority to execute it on their behalf.

■ As we have said, two of the heirs who executed the deed were married women. Their interests in the land were inherited by them from their father and

mother and were, therefore, their separate properties respectively. Article 1299, Revised Civil Statutes 1925, provides that the husband and wife shall join in the conveyance of real estate, the separate property of the wife, but we do not have any statute which specifically authorizes a married woman to bind herself under a contract to convey, in the future, her separate land and it has many times been held by our courts that the above mentioned statute does not provide authority for her to do so. Her contract so to do cannot, therefore, be enforced by the courts. Blakely v. Kanaman, 107 Tex. 206, 175 S.W. 674; Blue v. Conner, Tex.Civ.App., 219 S.W. 533; Finley v. Messer, Tex.Civ.App., 9 S.W.2d 756; Thompson v. Crim, 132 Tex. 586, 126 S.W.2d 18; Estapa v. Saldana, Tex.Civ. App., 200 S.W.2d 722. The married women were Georgia Noble and Gertrude Steeds and, while they and their husbands executed the deed, and thereby ratified the contract executed by R. R. Hoefer, the ratification was no more effective than their own contract to sell the land would have been. They were therefore not bound by the ratification and appellant cannot enforce specific performance of the contract as to them. We think however, the contract was subject to specific performance as to the others who signed the deed. They were Flynn Hoefer, R. R. Hoefer, Dora Mauk, a widow, Louise Walker, a widow, F. B. Hoefer, Marie Jackson, a widow, Jennie Miller, a widow, and William Hoefer, and, in our opinion, the court erred in instructing the jury to return a verdict in their favor.

One of the children of William Hoefer is designated in the plaintiffs' petition as Jessie Lee, a feme sole. The deed designates and refers to her as "Jessie (Hoefer) Allen and husband, Joe Allen," thus indicating she was a married woman when the deed was going its rounds among the heirs. Neither she nor her husband signed the deed and we find nothing in the record which indicates she did anything that could be construed as a ratification of the contract of sale, whether she was a married woman or not. According to the record before us appellant was not entitled to specific performance as against her.

Neither Harry J. Hoefer, T. R. Hoefer, A. F. Nossaman nor Henry Gransbury signed the deed. Nossaman was not one of the heirs of William Hoefer, deceased. He acquired the interest of John Hoefer as the purchaser at a sheriff's sale. Not being an heir of William Hoefer, deceased, Nossaman was not one of those whom R. R. Hoefer purported to represent when he executed the contract and it was, therefore, not executed on his behalf. It is not shown that he signed any other contract or memorandum of the sale and, even if he did verbally indicate his approval and ratification of it, he would not be bound by it because neither he nor anyone purporting to represent him had signed any written contract or memorandum of sale and his verbal ratification would not be sufficient to bind him under the statute of frauds. Article 3995, Vernon's Annotated Civil Statutes. The same may be said of Henry Gransbury. As far as we are able to ascertain he was not an heir of William Hoefer; but the devisee of Clara Hoefer, deceased.

Neither Harry J. Hoefer nor T. R. Hoefer signed the deed but appellant claims the testimony excluded by the court was sufficient to warrant a finding by the jury that they verbally ratified the contract of sale. Appellant testified he had a conversation with T. R. Hoefer in which the latter expressed his approval of the contract and indicated his willingness to sign the deed, and there was testimony of similar statements and conduct of Harry J. Hoefer. We think the testimony as to ratification of the contract by these two heirs was sufficient to raise a question of fact that should have been submitted to the jury.

In their motion for an instructed verdict appellees alleged among other things that the contract of sale executed by R. R. Hoefer and appellant was an entire and indivisible contract and that, since it could not be enforced as to all of the parties named in it as sellers, it could not be enforced as to any of them. By sustaining the motion and instructing the jury to return a verdict in favor of the appellees, the court sustained this contention of the appellees and appellant assigns such action

as error. The interests owned by the respective heirs and the successors in title to two of them were undivided interests. The amount and proportion owned by them respectively varied because some of them were children of William Hoefer by his first wife, some were his children by his second wife and the land was community property of William Hoefer and his second wife. Regardless of that, however, they were tenants in common and it is the established law of this state that where only a part of several tenants in common who execute a contract for the sale and conveyance of their interests in land are legally bound by it and others are not, notwithstanding it was originally contemplated that all should become so bound and the interests of all of them should be conveyed, the contract is susceptible to specific performance at the suit of the purchaser as to the interests of those who are legally bound, with an abatement of the purchase price proportionate to the interests not conveyed nor legally bound. Each of several tenants in common is entitled to sell his interest without regard to whether the others wish to do so or not and those signing a contract of sale or who become otherwise bound upon such a contract are legally bound by its terms though some of them might refuse to join therein or, by reason of other circumstances, specific performance against them cannot be decreed. Ward v. Walker, Tex.Civ.App., 159 S.W. 320; Johnson v. Mansfield, Tex.Civ.App., 166 S.W. 927; Carnell v. Kinser, Tex.Civ. App., 196 S.W.2d 941; Pearce v. Third Ave. Improvement Co., 221 Ala. 209, 128 So. 396, and cases therein cited. The rule applies with like force to a contract to sell definite tracts of land in which no tenancy in common exists. Hazzard v. Morrison, 104 Tex. 589, 143 S.W. 142. Of course, where the contract provides, or the parties have an agreement and understanding, that the contract is not to be complete unless all of the sellers execute it, such a provision is valid and the contract cannot be enforced unless all of the sellers sign it. McFarlane v. Howell, 16 Tex.Civ.App. 246, 43 S.W. 315; Parker v. Naylor, Tex. Civ.App. 151 S.W. 1096; Carnell v. Kinser, supra, 196 S.W.2d 941. There was no such provision contained in the contract here involved however, nor was there any testimony to the effect that any such agreement existed between any of the sellers and appellant. One or two of the appellees testified they understood that all of the sellers were to sign the contract but it appears that such an understanding was confined to their own minds. They did not say, nor indicate, that the understanding encompassed an agreement either among themselves or between them and the appellant.

Appellees assert, and the court seems to have so held, that all of the parties involved in the original contract of sale, including the appellant, construed the contract of sale as being an entire and indivisible one; that none of them expressed the purpose or intention of making a contract that would bind some of the owners and not others and that no request was ever made by appellant for a conveyance of the interests of only a portion of them. They contend that the contract should be construed as indivisible in accordance with the construction and intention of the parties to it. The rule of law under which a contract such as that involved here is held to be divisible in its nature and enforcible against those bound by it while not enforcible against others who were contemplated to be so bound is based upon the universal rule that each of such owners has the right to sell his interest without regard to the wishes or conduct of the others. Such contracts always imply that all of the owners mentioned as sellers will join in a conveyance and effectuate a sale of the entire interest held by all of them but, where there is no condition stipulated in the contract, nor any agreement by the parties that none should be bound unless all are, there is neither inequity nor injustice in requiring those who are bound to perform the contract as far as they are able to do so. Each of them receives the consideration provided for him in the contract and he is therefore, not deprived of any right or subjected to any injustice. He has as much right to sell his interest as he would have to sell all of the property if he were the sole owner.

Appellees contend further that appellant's pleading did not contain any alle-

gation concerning the divisible nature of the contract and that it was insufficient to constitute a basis for a decree of specific performance against a portion only of the owners. Appellant alleged that he was then tendering performance on his part to each and everyone of the plaintiffs and the cross-defendants, in every particular, as to each individual interest owned by them, separately as to each of their interests, and collectively as to all. The pleading did not include a specific prayer in accordance with those allegations but it pleaded for such general relief, in law or equity, as to which appellant might show himself entitled. The pleading was not questioned in this respect and we think it was sufficient although it might not have been as full and comprehensive as it could have been.

■ On April 5, 1947, and other later dates, but long after the contract was executed between R. R. Hoefer and appellant, and long after the deed to appellant had been executed by most of the heirs of William Hoefer and returned to R. R. Hoefer, appellees H. L. Marble and E. M. Jackson entered into separate contracts with most, or all of the living heirs of William Hoefer, deceased, and those who had succeeded to the interests of other heirs, under which Marble and Jackson purchased from the owners, and the owners agreed to sell to them, all of their respective interests in the land. All such owners then executed deeds conveying their respective interests to Marble and Jackson and the contracts and deeds were placed in escrow pending approval of the title. These contracts contained provisions under which the sellers bound themselves to furnish to Marble and Jackson a complete abstract of the title showing a title free and clear of all liens and encumbrances, save and except the taxes, and they provided also that whatever rights appellant, John S. Hays, may have in the property would be shown in the abstract. They provided further that, in regard to the claims of Hays, it would be necessary to file a lawsuit to determine whether or not Hays had any claim to the property. Marble and Jackson bound themselves to bear the expense of such litigation and the sellers authorized them to institute it. It was further provided that if, at the termination of the litigation, Hays should recover the land, the contracts with Marble and Jackson should become null and void. Appellees, Marble and Jackson, therefore purchased the land with full knowledge and notice of the claims of appellant and the record does not reveal any rights or interests owned by them that are not subject to whatever rights appellant might have under the original contract with R. R. Hoefer.

■ Appellees make the further contention that the contract executed by R. R. Hoefer did not contemplate the sale of the community interest of Magdalena Hoefer, the deceased wife of William Hoefer. As we have said, the land was the community property of William Hoefer and his second wife, Magdalena. While neither Magdalena Hoefer, her heirs nor her community interest in the land was specifically mentioned in the contract, her heirs were the same as those of William Hoefer and the contract was treated by all of the parties as a sale of all of the land. We think it is conclusive from the testimony and the conduct of the parties that the entire title and interest was contemplated. It provided that the consideration should be $22.50 per acre. The tract of land consisted of three hundred and twenty acres and the deed recited a consideration of $7,200, which is the exact total consideration provided by the contract. In both the contract and the deed the land was described in its entirety. In neither of them was a half interest mentioned. There is nothing in the testimony to indicate that any of the parties had in mind the sale of an undivided interest or any interest less than the whole and, in our opinion, there is no merit in this contention.

■ About a year after the contract of sale was executed and appellant had deposited the $1,000 earnest money, he procured his attorney to write a letter to R. R. Hoefer in which he expressed the opinion that the trade could not be consummated within a reasonable time on account of the large number of heirs involved and requested Hoefer to release the deposit of earnest money. In Hoefer's reply he expressed a willingness to comply with appellant's request provided appellant would set-

tle with the real estate agents, pay the taxes on the land and sign a rental contract on a portion of the land that seems to have been planted in wheat. Appellant did not agree to the conditions and the contract and the deposit remained in the bank and were there when the suit was tried. Appellee contends that this proposition of appellant constituted a waiver of his rights under the contract of sale and that he was not entitled further to demand compliance with it. We find nothing in this incident which amounts to a waiver. It had been almost a year since the contract was executed and appellant's efforts to terminate the transaction were based upon the apparent difficulties and delay involved in procuring the consent of all of the owners of the land and his expressed doubt that the transaction could be closed within a reasonable time.

From what we have said it is evident that, in our opinion, the court below erred in directing the jury to return a verdict in favor of the appellees. The judgment will therefore be reversed and the cause remanded.

### On Motion for Rehearing.

#### PER CURIAM.

In their motion for rehearing appellees call our attention to the fact that the conversation between appellant and H. J. Hoefer and T. R. Hoefer, in which appellant contends these two brothers expressed approval of and ratified the contract of sale made by R. R. Hoefer, occurred long after they had executed the contracts of sale and deeds conveying their interests in the land to appellees and after this suit was instituted. They contend that H. J. and T. R. Hoefer had therefore put it beyond their power to ratify the contract between R. R. Hoefer and appellant and that, even if they ratified it in the conversations referred to, such ratification was ineffective as to appellees.

The Law is ever jealous of the rights of innocent purchasers and if, prior to the ratification of an unauthorized contract by the purported principal, third persons have, in good faith, acquired substantial rights or been placed in such position in reference to the property involved that they will be prejudiced by the ratification, the principal will not be allowed thus to overreach and defeat those rights. Mechem on Agency, 2nd Ed., Paragraph 486; Swiss Oil Corporation v. Hupp, 232 Ky. 274, 22 S.W.2d 1029. The deeds executed by H. J. and T. R. Hoefer to appellees Marble and Jackson had not been delivered but were placed in escrow with the contracts of sale. The facts concerning the question of their ratification of the contract and the question of whether or not appellees had, in good faith, acquired rights in the property that are so protected is a question of fact to be decided by the jury.

In further support of our conclusions as expressed in the original opinion we cite: Dana v. Turlay, 38 Minn. 106, 35 N.W. 860; Sleeper v. Murphy, 120 Iowa 132, 94 N.W. 275; Stuart v. Mattern, 141 Mich. 686, 105 N.W. 35.

In his reply to the motion for rehearing appellant contends that judgment should be here rendered in his favor as against those who executed deeds and thereby ratified the original contract of sale. We find nothing in either motion which changes our views as expressed in the original opinion and the motions will be overruled.